**UNITED STATES of America,**

v.

**Dorian CANTY, William Stevens a/k/a Peanut, Fnu Lnu a/k/a "B.R.," Keith Lnu, Vanessa Lnu, Jay Lnu and Fnu Lnu a/k/a "Smitty".**

**No. 97–CR–097.**

United States District Court,
N.D. New York.

July 21, 1997.

Office of Gregory D. Cholakis, Troy, NY (Gregory D. Cholakis, of counsel), for defendant Rodney Sapp.

Office of Van Zwisohn, Clifton Park, NY (Van Zwisohn, of counsel), for defendant Richard Garrison.

Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, NY for U.S.

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

### I. PROCEDURAL HISTORY

Presently before the Court are defendants Rodney Sapp and Richard Garrison's omnibus motions for an order compelling: a bill of particulars; grant of discovery and inspection; severance of trial; dismissal of the indictment; suppression of evidence; production and exclusion of evidence relating to other convictions and bad acts; disclosure of co-defendant cooperation; disclosure of confidential informants' identities and statements; disclosure of co-conspirators' statements; leave to renew or initiate new motions; and an audibility hearing to determine the coherence of various government recordings. Sapp further moves for the right to join in co-defendants' motions. The government contests all of the foregoing motions in addition to moving the Court to amend the Indictment to reflect the defendants' true names.

### II. FACTS

On April 10, 1997 a Troy, New York grand jury indicted defendants Dorian Canty, William Stevenson a/k/a William Stevens a/k/a Glen William Stevens a/k/a Peanut, Rodney Sapp a/k/a Fnu Lnu a/k/a "B.R.," Richard Garrison, a/k/a Keith Lnu a/k/a Rashad Garrison, Kevin Lnu, Vanessa Davis a/k/a vanessa Lnu, Jay Lnu and Robert Hubert a/k/a Fnu Lnu a/k/a "Smitty" on charges of possessing with intent to distribute "crack" cocaine and conspiring to distribute "crack" cocaine. *See* 21 U.S.C. §§ 846; 841(a)(1); 18 U.S.C. § 2. The total body of charges span a period from March 5, 1997 to April 10, 1997, but specifically set forth the dates, locations, participants and substances involved in the alleged transactions.

Sapp and Garrison filed the instant motions on June 16, 1997 and June 18, 1997, respectively. The government timely filed opposition papers for each.

### III. DISCUSSION

The government moves only to amend the Indictment to reflect defendants' true names. Defendants, however move the Court for: (1) a bill of particulars; (2) grant of discovery and inspection; (3) disclosure of co-conspirators' statements; (4) disclosure of witnesses' identities; (5) disclosure of informants' identities; (6) production of exculpatory material; (7) severance of trial; (8) dismissal of the indictment; (9) suppression of evidence; (10) production and exclusion of evidence relating to other convictions and bad acts; (11) leave to renew or initiate new motions; (12) an audibility hearing; and (13) the right to join in co-defendants' motions. The Court addresses each motion in turn.

#### A. Government's Motion to Amend the Indictment

A Court may freely grant amendments to an Indictment that relate to the Indictment's form and do not affect a defendant's substantive rights. *See Russell v. United States,* 369 U.S. 749, 769–70, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962); *United States v. McGrath,* 558 F.2d 1102, 1105 (2d Cir.1977). Here, the government requests an Order amending the Indictment to reflect the defendants' true identities, identities obfuscated by the numerous aliases defendants used at the time of indictment.

■ Defendants do not argue that such an amendment would impair their substantive rights. Moreover, the Court sees no adverse affect resulting from the proposed change (i.e. crimes charged and available defenses are not affected). *See United States v. Ke-*

*gler,* 724 F.2d 190, 195 (D.C.Cir.1983). Thus, in keeping with the modern view and broad legal consensus concerning misnomer, the Court orders that the Indictment be amended to reflect defendants' true names. *See Id.* 724 F.2d 190 (D.C.Cir.1983); *United States v. Denny,* 165 F.2d 668, 670 (7th Cir.1947). As such, all further motions and dispositions involving the instant case shall be captioned as follows:

UNITED STATES OF AMERICA

—against—

DORIAN CANTY, WILLIAM STEVENS, a/k/a GLEN WILLIAM STEVENS, a/k/a PEANUT; RODNEY SAPP, a/k/a "B.R."; RICHARD GARRISON, a/k/a RASHAD GRIFFIN a/k/a KEITH LNU; VANESSA LNU, a/k/a VANESSA DAVIS; ROBERT HUBERT, a/k/a "SMITTY" VANESSA DAVIS and ROBERT HUBERT, Defendants.

No. 97–CR–97

### B. Defendants' Motions

Defendants Garrison and Sapp have made several motions independent of one another. Their motions, however, largely seek the same relief As such, when the relief defendants request is the same, the Court will address their motions jointly, mindful of the individual facts each defendant alleges.

#### 1. Bill of Particulars

■ The purpose of a bill of particulars is to enable the defendant to prepare a defense, interpose a plea of double jeopardy, and prevent surprise at trial. *See United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987). However, there is no requirement that the government particularizes its evidence. *See United States v. Davidoff,* 845 F.2d 1151, 1152 (2d Cir.1988); *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.1990). A bill of particulars is only required when the charges in the Indictment are so general that they fail to appraise the defendant of the specific acts of which he is accused. *See Torres,* 901 F.2d at 234; *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (1989). Supplying evidentiary detail is not the function of the bill of particulars; it is not meant to be a method for compelling disclosure of the government's evidence before trial. *See Torres* 901 F.2d at 234; *United States v. Lebron,* 222 F.2d 531, 535–36 (2d Cir.1955).

Generally, if the Indictment contains the information sought by the defendant, a bill of particulars is not necessary. *See Bortnovsky* at 574. In any case, whether or not to grant such a request rests in the sound discretion of the trial judge. *See United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984).

■ In this case, Sapp argues that a bill of particulars is appropriate because the indictment does not specify what conduct of his furthered the alleged crimes. In his motion for a bill of particulars Garrison seeks, *inter alia,* the particular times, dates, locations and circumstances of the alleged possessions as well as a statement specifying the elements of the conspiracy, the overt acts involved, the identities of other conspirators and witnesses to the overt acts, the content of the communications between the individuals involved and the type of cocaine allegedly distributed.

The Indictment sets forth the crimes charged, the date on which the crimes were allegedly committed, the participants, the location and the substances involved. Thus, because "much of the information requested in the bill of particulars is readily found in the indictment," the Court finds "the indictment i this case is sufficiently detailed so that the defendant can adequately prepare a defense, avoid prejudicial surprise at trial, and raise any possible defense of double jeopardy." *See United States v. Remy,* 658 F.Supp. 661, 669 (S.D.N.Y.1987). As such, the Court concludes that the Indictment, coupled with the discovery information the government has thus far provided to defendants, sufficiently apprises them of the crime charged and the general outline of the government's case against them making defendants' request for a bill of particulars unnecessary. *See United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.1989). Therefore, defendants' motion is denied.

## 2. Discovery and Inspection

The ambit of pretrial discovery and inspection is set forth clearly and at length by Fed.R.Crim.P. 16.[1] In the instant case, each defendant moves for discovery and production of all materials enumerated ruder the rule.

However, the government has provided defendants with copies of taped conversations as well as reports relating to the sale of cocaine base and laboratory analysis of the substance's content pursuant to Fed. R.Crim.P. 16. Moreover, the government has acknowledged its Rule 16 responsibilities and has pledged to continue to comply. Thus, in light of the government's continuing cooperation in discovery, the Court finds it unnecessary to issue an order directing the government to fulfill its Rule 16 duties at this time.

■ Finally, the Court notes that insofar as defendants' requests pertain to statements of co-conspirators, such statements "are not discoverable under Federal Rule of Criminal Procedure 16(a)." *United States v. Munoz*, 736 F.Supp. 502, 504 (S.D.N.Y.1990) (citations omitted). Rule 16's plain language applies only to "the discovery of statements 'made by the defendant.' The rule does not mention and is not intended to apply to the discovery of statements made by co-conspirators." *See United States v. Roberts*, 811 F.2d 257, 258–59 (4th Cir.1987) (en banc).

For these reasons, defendants Rule 16 motions are denied.

## 3. Motion to Compel Disclosure Of Co–Conspirators' Statements

Although co-conspirators' statements are not discoverable under Fed.R.Crim.P. 16(a), such statements may be discoverable under the Jencks Act, 18 U.S.C. § 3500. *See United States v. Roberts*, 811 F.2d 257, 258–59 (4th Cir.1987)(en banc)(rule 16 "pertains to the discovery of statements 'made by the defendant.'" The rule does not mention and is not intended to apply to the discovery of statements made by co-conspirators.) The Jencks Act protects witnesses' statements from discovery until after the witness has testified on direct examination at trial. *See* 18 U.S.C. § 3500(a). The purpose of this protection is to safeguard witnesses from possible reprisals, and thus, is consistent with the "strong public interest in encouraging the free flow of information to law enforcement officers" used to justify secreting informants' identities. *See United States v. Ciambrone*, 601 F.2d 616, 626 (2d Cir.1979); *United States v. Tucker*, 380 F.2d 206, 213 (2d Cir.1967). The Second Circuit has held that under the Jencks Act courts are not permitted to order, and defendant are not entitled to, production of co-conspirators's statements prior to trial. *See In re United States*, 834 F.2d 283, 287 (2d Cir.1987); *See*

---

1. Rule 16 (Discovery and Inspection), provides that

(a) Governmental Disclosure of Evidence. (1) Information Subject to Disclosure.

(A) Statement of Defendant. Upon request of a defendant the government must disclose to the defendant and take available for inspection, copying, or photographing: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody, or control of the government ...

(B) Defendant's Prior Record. Upon request of the defendant, the government shall furnish to the defendant such copy of the defendant's prior criminal record, if any ...

(C) Documents and Tangible Objects. Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant ...

(D) Reports of Examinations and Tests. Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, nd of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government ... and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial ...

(E) Expert Witnesses. At the defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications.

*also* 18 U.S.C. § 3500; *United States v. Per-cevault,* 490 F.2d 126 (2d Cir.1974).

■ Defendants argue that, despite the Jencks Act's concerns of intimidation, disclosure of co-conspirators' statements is appropriate here because both defendants are incarcerated and thus pose no threat to any one's safety. The Court does not find this argument to be completely persuasive, however, because a defendant's reach may exceed his grasp with regard to intimidation.

The Court finds no reason to depart from its usual practice of requiring Jencks Act material to be handed over after jury selection. The Court, therefore, grants defendants' motions for early production co-conspirators's statements, but only to the extent set forth herein.

### 4. Motion to Compel Disclosure of Witnesses' Identities

■ Defendants must show a specific need for the government's witness list in order succeed on a motion for compulsory disclosure. *See United States v. Cannone,* 528 F.2d 296, 301–02 (2d Cir.1975). It is not enough to simply assert that such list is necessary in preparation for trial. *See United States v. Santoro,* 647 F.Supp. 153, 186 (E.D.N.Y.1986), *rev'd, on other grounds, United States v. Davidoff,* 845 F.2d 1151 (2d Cir.1988). Additionally, the government is, not required to identify individuals that it does not intend to call as trial witnesses. *See United States v. Zirpolo,* 288 F.Supp. 993, 1019 (D.N.J.1968), *rev'd on other grounds,* 450 F.2d 424 (3d Cir.1971)(noting that since the government is not required to disclose who will testify it is certainly not necessary to divulge who will not appear). Moreover, the identity of grand jury witnesses is protected from the disclosure under Fed.R.Crim.P. 6(e), and so defendants have no right to such information.

■ In the instant case, defendants' contend that disclosure of co-defendant cooperation, the names and addresses individuals who testified before the grand jury and the identity of each witness the government intends to call at trial are necessary for cross-examination and the mounting of an adequate defense. With regard grand jury wit-

nesses, such persons' identities are expressly protected from disclosure. *See* Fed. R.Crim.P. 6(e). As to other witnesses, defendants argue that in light of the government's expressed intention to call multiple witnesses, early production of a witness list is necessary for defense preparation. However, *Davidoff* rebukes this request because it essentially asks for additional preparatory materials without showing "specific need," as required by *Cannone. See Davidoff,* 845 F.2d 1151; *Cannone,* 528 F.2d 296, 301–02. Therefore, the Court denies defendants' motions for production of witnesses' identities.

### 5. Motion to Disclose Informants' Identities

■ In *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), the Supreme Court held that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Despite this holding, however, the Supreme Court has held that no fixed rule for determining when to disclose the identity and information held by an informant is appropriate. *See Id.* at 60–64, 77 S.Ct. at 628–29. Rather, the Court requires a balancing of the public's interest in protecting the flow of information against the individual's right to prepare his defense *See Id.* The decision must be made in light of "the particular circumstances in each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *See Id.* at 62, 77 S.Ct. at 629.

The Second Circuit has interpreted *Roviaro* to require disclosure of informant information only when the informant's testimony is shown to be "material to the defense." *See United States v. Saa,* 859 F.2d 1067, 1073 (2d Cir.1988). The determination of materiality lies with the trial judge who is subject an "abuse of discretion" standard for this decision. *See DiBlasio v. Keane,* 932 F.2d 1038, 1042 (2d Cir.1991).

In *Saa* the Circuit stated that "[i]t is not sufficient to show that the informant was a

participant in and a witness to the crime charged." *See Saa* at 1073. However, "disclosure has been required at trial where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *See United States v. Russotti,* 746 F.2d 945, 950 (2d Cir.1984). Moreover, a defendant must show that the "information sought is relevant and essential to the presentation of his case on the merits, and that the need for disclosure outweighs the need for secrecy." *See Cullen v. Margiotta,* 811 F.2d 698, 715–16 (2d Cir.1987).

In the instant case, defendants' move the Court for an order compelling the government to disclose informants' identities. Apart from bald statements that the disclosure is necessary for trial preparation, however, neither defendant has shown that such disclosure is material to his defense. As such, defendants cannot compel disclosure of an informant's identity. *See United States v. Trejo–Zambrano,* 582 F.2d 460, 466 (9th Cir.1978)(holding that a defendant cannot compel disclosure of an informant's identity upon mere speculation speculate that such disclosure will be helpful to his case). For this reason, the Court denies defendants' motions.

### 6. Exculpatory Materials

■ Pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, a prosecutor must disclose certain exculpatory material to the accused. *See e.g., United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Normally, exculpatory material must be provided to the defendant as it becomes known to the prosecution. See *United States ex rel. Lucas v. Regan,* 503 F.2d 1, 3 n. 1 (2d Cir.1974).[2]

Here defendants move the Court to compel the government to disclose all exlcupatory materials as required by *Brady.* However, the government's brief plainly states that it has no Brady materials. Thus, the Court

denies defendants' request for an order compelling production of *Brady* materials. However, the Court reminds the government that disclosure under *Brady* is an ongoing duty. Accordingly, should any such materials arise, the government must comply with the well-established disclosure rules at that time.

### 7. Severance

Generally, joinder of multiple defendants is permissible where the defendants have participated in the same act, transaction or series of acts or transactions that are part of a common plan. *See* Fed.R.Crim.P. 8(b); *United States v. Attanasio,* 870 F.2d 809 (2d Cir.1989). However, severance appropriate where it appears that a "defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment." *See* Fed.R.Crim.P. 14.

The party requesting severance has the significant burden of showing it is necessary. *See United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir.1984)("[t]he defendant seeking a severance must shoulder the difficult burden of showing that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials"); *United States v. Losada,* 674 F.2d 167, 171 (2d Cir. 1982). The moving party must show "substantial prejudice" which must be more than evidence of "a better chance of acquittal" if severance was granted *See United States v. Potamitis,* 739 F.2d 784, 790 (2d Cir.1984).

■ Severance should only be granted where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *See Zafiro v. United States,* 506 U.S. 534, 539, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993) Mere antagonism among the defenses used by the co-defendant is not sufficient to warrant severance. *See United States v. Serpoosh,* 919 F.2d 835, 837 (2d Cir.1990). In addition, the movant must overcome the presumption in favor of a joint

---

2. It should be noted that it is now axiomatic that the prosecutor has an affirmative duty to volunteer evidence that arguably falls within the scope of *Brady,* and, in fact, is presumed to have

knowledge of the contents of his files, such that claims that exculpatory evidence was overlooked will not be tolerated *See Agurs,* 427 U.S. at 110, 96 S.Ct. at 2400–01.

trial for all defendants charged in a single conspiracy. *See United States v. Dickens,* 695 F.2d 765, 778–79 (3d Cir.1982). Moreover, severance may be granted if the defendant has shown that the jury could not reasonably be expected to "compartmentalize" the evidence as it relates to him and that the failure to sever prejudices him to the point that he is denied a fair trial. *See Id.* at 778. The decision to grant a motion for severance finally falls within the sound discretion of the trial court. *See* Fed.R.Crim.P. 14.

Here, Sapp seeks severance on the grounds that: (1) the jury may find him guilty by association; (2) his defenses are apt to be antagonistic to his co-defendant's; and (3) he will be denied access to potentially exculpatory co-defendant testimony. In his request for severance, Garrison asserts in conclusory terms that he would be prejudiced if tried jointly and posits the likelihood of a *Bruton* issue. *See Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)(holding that introduction of a co-defendant's hearsay confession implicating the accused violated the accused's right to confrontation despite he court's having given a limiting instruction).

■ The Court finds while *Bruton* may pose a problem in a multi-defendant case such as this, *Richardson v. Marsh* 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987), provides a solution by allowing use of a co-defendant's hearsay confession where a limiting instruction has been given and the confession is redacted to eliminate reference to other defendants. Thus, pursuant to *Richardson* and the Second Circuit cases that have followed its teaching, the Court finds no reason to sever trial because of a potential *Bruton* issue. *See e.g., United States v. Williams,* 936 F.2d 698, 700 (2d Cir.1991)(holding that if a redacted confession, when viewed in isolation of other trial evidence, does not incriminate defendant, it may be admitted upon a proper limiting instruction). Rather, should a *Bruton* issue arise, the Court will address it in keeping with the aforementioned cases.

As to the defendants' remaining severance arguments, the Court finds them unpersuasive. First, the Second Circuit has generally held that defendants who are indicted together and properly joined under Fed.R.Crim.P. 8(b), should be tried together. *See United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983). In this regard, joint trials are more efficient and "serve the interests of justice [by] avoiding the scandal and inequity of inconsistent verdicts." *See Richardson,* 481 U.S. at 210, 107 S.Ct. at 1709.

■ Second, the possibility of antagonistic testimony does not mandate severance. *See Serpoosh,* 919 F.2d at 837. Here, Sapp argues that no more than that which was held insufficient in *United States v. Villegas,* 899 F.2d 1324, 1346 (2d Cir.1990). In *Villegas,* the Circuit stated that "[t]he mere fact that co-defendants seek to place blame on each other is not the sort of antagonism that requires severance."

Third, in deciding whether to grant severance based on the inability of the co-defendant to testify in favor of another defendant during a joint trial, the trial court may consider at least four factors: "(1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which exculpatory testimony would be cumulative; (3) the counter argument of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment." *See United States v. Finkelstein,* 526 F.2d 517, 523–24 (2d Cir. 1975). Sapp's motion does not even address these issues. Thus, the Court denies this motion because defendants have failed to make a sufficient showing that severance is necessary.

### 8. Dismissal of Indictment

Generally speaking, the Federal Rules of Criminal Procedure simply require an Indictment to contain "a plain, concise and definite written statement of the essential facts constituting the offense charged" and he rule of law allegedly violated by the defendant in each count against him. *See* Fed.R.Crim.P. 7(c)(*l* ). There is no requirement of specificity, and the Indictment may be amended with the court's permission any time until the verdict is returned. *See* Fed.R.Crim.P. 7(e).

In the instant case, both defendants gave notice of motion to dismiss the Indictment, but have not provided any factual or legal grounds to support this request in their memoranda of law. Therefore, the Court denies these motions.

### 9. Suppression

 An evidentiary hearing need not be granted as a matter of course and generally will be held "only if the moving papers allege facts with sufficient definiteness, clarity and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved." *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir.1972). General and conclusory factual allegations that are based upon mere suspicion or conjecture, however, will not suffice to necessitate a hearing. *See Cohen v. United States*, 378 F.2d 751, 760 (9th Cir.1967). Moreover, if facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required. *See Gentile v. County of Suffolk*, 926 F.2d 142, 148 (2d Cir.1991), *citing, United States v. Irwin*, 612 F.2d 1182 (9th Cir.1980).

██ Sapp's Notice of Motion contains a statement that "[u]pon information and belief, probable cause was 'lacking' as to the issuance of search, arrest, or electronic surveillance warrants." In his Memorandum of Law, however, Sapp alleges no facts to support his contention that the warrants were defective. Therefore, the Court must deny Sapp's suppression motion for lack of factual and legal sufficiency. *See Gentile*, 926 F.2d at 148.

██ Similarly, Garrison moves to suppress all documents, writings, currency, controlled substances, business records, recordings, etc. the prosecution intends to use at trial, as well as any statement or action made by the defendant in violation of his Fifth, Sixth and Fourteenth Amendment rights. Garrison also fails to set forth any factual basis for this motion. *See Id.*

Finally, the government states in its opposition papers that it is unaware of any post-arrest statements or physical evidence obtained in relation to this matter. Absent anything to suppress, the Court cannot grant Garrison's motion. The Court therefore denies Garrison's motion to suppress.

### 10. Evidence Relating to Prior Convictions or Bad Acts

Defendants raise evidentiary issues relating both to Fed.R.Evid. 404 and 609. The Court addresses these issues in turn.

#### a. 404(b) Material

Rule 404(b) allows the admission of evidence of other crimes, wrongs or acts for purposes including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). However, the Rule also requires that "the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." *See* Fed.R.Evid. 404(b); *see also, United States v. Paccione*, 949 F.2d 1183, 1199 (2d Cir.1991). This is designed to reduce surprise and promote early resolution of admissibility issues. *See* Fed.R.Evid. 404(b)

Defendants seek an order from the Court directing the government to disclose any similar or extrinsic acts evidence the government intends to use at trial. Thus, according to Rule 404(b), the Court grants defendants motion for disclosure of similar and extrinsic acts evidence the government plans to use at trial. However, the Court notes that this disclosure is intended to require the prosecution only "to apprise the defense of the general nature of the evidence of extrinsic acts," and it does not supersede other rules on admissibility and disclosure such as the Jencks Act, nor does it require the government to reveal the names and addresses of its witnesses. *See Committee Note:o 1991 Amendment to Rule 404(b)*. The government has stated that it understands its duties under 404(b), and that it has satisfied them. As the government is aware of its duties and appears to be in compliance, the Court denies defendants' motion.

#### b. Rule 609(a) Material

Defendants seek to prevent the government from admitting evidence of prior felony convictions and bad acts under Fed.R.Evid.

609 [3] where the prejudicial effect outweighs its probative value under Fed.R.Evid. 404(b). The Court, however is hindered in any effort to rule on evidentiary questions outside a factual context. *See Luce v. United States,* 469 U.S. 38, 41, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984)(stating that "to perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when . . . the defendant does not testify"). This is particularly true under Rule 609(a)(1), which directs the Court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. Accordingly, the Court declines to determine any evidentiary issues that may arise under 609 outside the context of the trial.

### 11. Leave to Renew or Initiate New Motions

Sapp, "in anticipation of materials to be produced and responses given by the government in response to the instant application," also moves the Court to reserve his right to bring further motions as are necessary for his defense. Garrison essentially makes an identical motion.

The government it does not oppose defendants' requests inasmuch as they apply to motions which could not have been made within the original time period authorized by the Court. To this extent only, the Court will allow defendants leave to renew or initiate new motions.

### 12. Audibility Hearing

The Second Circuit has expressed a "clear preference for the admission of recordings notwithstanding some ambiguity and inaudibility, as long as the recordings are probative." *See United States v. Arango–Correa,* 851 F.2d 54, 58–59 (2d Cir.1988). Therefore, a recording is generally admissible unless its audibility is so substantially impaired as to render it unintelligible. *See Id.* at 58.

Both defendants have had access to the government's tapes and the transcripts thereof Based on their review, defendants' claim that portions of the recording are inaudible. However, the government claims that even if the tapes are not fully inaudible, they must be admitted under *United States v. Weiser,* 428 F.2d 932, 937 (2d Cir.1969), since partial inaudibility goes to weight, not admissibility.

Because the parties dispute the tapes' audibility, the Court must determine whether the recordings are "sufficiently audible to be probative." *See United States v. Bryant,* 480 F.2d 785, 790 (2d Cir.1973)(stating that trial court has discretion to decide if partially audible recordings are admissible). Thus the Court grants defendants an audility hearing to determine the extent of the recordings' coherence. Such hearing will be conducted immediately before trial.

### 13. Request to Join in Co–Defendants' Motions

Finally, Sapp, pursuant to Fed.R.Crim.P. 12 and 57, seeks to join the motions made by his co-defendants but does not specify what these arguments are. To allow such joinder would inhibit the government's ability to reply to such arguments effectively. Thus, the Court denies Sapp's motion.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's motion to amend the Indictment. Furthermore, the Court **GRANTS** defendants' motions for early production of Jencks Act materials, but only to the extent allowed by the local rules. The Court also **GRANTS** defendants' motions renew or initiate new motions and for an audibility hearing. The Court **DENIES** all other motions made by Sapp or Garrison.

**IT IS SO ORDERERED.**

---

**3.** Rule 609(a) provides:

"General Rule.—For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or im-

prisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."